IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOHNNY S.**, a minor child, by and through his parents
and next friends **DARLENE R.** and **JUAN S.**,

      Petitioners-Appellants,

      vs.                                    Civ. No. 13-145 MV/ACT

**POJOAQUE VALLEY SCHOOL DISTRICT**, and
**THE BOARD OF EDUCATION FOR THE
POJOAQUE VALLEY SCHOOL DISTRICT**,

      Respondents-Appellees.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Petitioners-Appellants' Motion to Compel Responses to Petitioners-Appellants First Set of Interrogatories, Requests for Admission and Requests for Production ("Motion to Compel"), filed October 7, 2013. [Doc. 44.] On October 22, 2013, Respondents-Appellees filed their Response ("Response"). [Doc. 46.] On November 5, 2013, Petitioners-Appellants filed their Reply ("Reply"). [Doc. 48.] Having considered the parties' submissions and the relevant law, the Court finds that Petitioners' Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**.

### I.  PROCEDURAL AND FACTUAL BACKGROUND

Petitioners-Appellants ("Petitioners") filed their Petition for Judicial Review and Attorney's Fees Pursuant to 20 U.S.C. § 1415 on February 12, 2013.[1] [Doc. 1.] Petitioners are

---

[1] Petitioners filed a Complaint for Civil Rights Violation, Disability Discrimination, and Negligence on September 4, 2012, in the Second Judicial District Court, County of Bernalillo, that is based on the same events in this proceeding.  The case was subsequently removed to the United States District Court for the District of New Mexico on January 10, 2013. [USDC NM Civ. No. 13-27 MCA/KBM.]  That case is currently stayed pending the Court's decision on the issue of qualified immunity. [USDC NM. Civ. No. 13-27, Doc. 52.]

seeking judicial review of the Due Process Hearing Officer's ("DPHO") Final Decision issued by the New Mexico Public Education Department, Office of Special Education, in Case Number NMPED DPH 1112-29. [Doc. 3-1.] Petitioners prevailed on most of their claims at the administrative level and were awarded significant equitable relief. [Doc. 1 at 2, ¶ 10.] However, Petitioners claim "there are aspects of the DPHO's award of equitable relief that are not adequate to address the ongoing and continuous deficits in Johnny S.'s educational program[.]" [Doc. 1 at 2-3, ¶ 11.] The claims for relief sought by Petitioners are as follows:

1. The DPHO erred in concluding that Respondents had not denied a free appropriate public education to Johnny S. by failing to develop and implement appropriate Health Care Plans ("IHP") for Johnny S. for the 2010-2011 and 2011-2012 school years.

2. The DPHO erred in finding that an adequate IHP was present in Johnny S.'s IEP at the beginning of 2010-2011 school year and that the District staff members who worked with Johnny S. were informed as to its provisions.

3. The DPHO erred in concluding that Respondents had not denied a free appropriate public education to Johnny S. by not providing homebound or other educational services in the home when Johnny S. was absent due to injuries incurred at school and by not convening an IEP team meeting to affirmatively address Johnny S.'s need for services during that period.

4. The DPHO erred in concluding that Respondents had educated Johnny S. to the maximum extent appropriate with children who are nondisabled and by not addressing his claim that he was excluded from nonacademic opportunities available to his non-disabled peers required by his IEP.

5. The DPHO erred in failing to address the failure of Respondents to include a general education teacher in Johnny S.'s IEPs and failing to ensure that the IEP team address Johnny S.'s Lease Restrictive Environment.

6. The DPHO erred in finding that Johnny S. Was enrolled in a self-contained, "D level" special education classroom for students with low-incident disabilities.

7. The DPHO erred in finding that the District had conduced a Functional Behavior Assessment and in implicitly finding that Johnny S.'s behaviors justified his segregation in and within the special education classroom.

    8.      The DPHO erred in concluding that the District was not required under the IDEA to conduct a functional behavior assessment ("FBA") or develop and implement a behavioral intervention plan ("BIP").

    9.      The DPHO erred in rejecting the expert testimony and opinions of Dr. Michael O'Leary.

    10.     Petitioners are entitled to an award of attorney's fees and costs as prevailing parties in their due process action and in their Petition for Review and Attorney's Fees.

[Doc. 1 at 4-5.]

Johnny S. is 20 years old and has a medical history significant for Fetal Alcohol Syndrome, severe seizure disorder or epilepsy, and Attention Deficit Hyperactivity Disorder. [Doc. 3-1 at 4.] He has intellectual and physical abilities that are "significantly delayed resulting in marked deficits in cognitive abilities, receptive and expressive language, fine and gross motor functioning and overall adaptive behavior." [Id.] He has been eligible for special education and related services since "at least 2003." [Id.]

## II. RELEVANT LAW

### A. Scope and Relevance of Discovery

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Federal courts have held that the scope of discovery under Rule 26 is deliberately broad. "The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1974); *see Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matt*, 229 F.R.D. 649, 654 (D.N.M. 2004 (Browning, J.) ("The federal courts have held that the scope of

discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, the "object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D.Ill. 1998)(quoting *Piacenti v. General Motors Corp.*, 173 F.R.D. 221, 223 (N.D.Ill. 1997)). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id*. Courts have also recognized that "[t]he legal tenet that relevancy in the discovery content is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.*

### B.      Interrogatories and Requests for Production

Rule 33 requires a party to answer an interrogatory "separately and fully . . ., unless it is objected to, in which event the objecting party . . . shall answer to the extent the interrogatory is not objectionable." Fed. R. Civ. P. 33(b)(1). Likewise, Rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . . If an objection is made to part of an item or category, that part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). Rule 33 also provides: "all grounds for an objection to an interrogatory shall be stated with specificity." Fed. R. Civ. P. 33(b)(4). "The burden is on the objecting party to show why an interrogatory is improper." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2173, at 291-92. The objecting party is required to "show specifically how, despite the broad and liberal construction afforded the federal discovery

rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 519 (D.Kan. 2010)(quoting *Allianz Ins. Co. v. Surface Specialities, Inc*., 2005 WL 44534, at *2 (D.Kan. Jan. 7, 2005)(unpublished opinion).

### C. Requests for Admission

Rule 36(a)(1) allows for a party to serve on any other party a request that the party admit "the truth of any matters within the scope of Rule 26(b)(1) relating to ... facts, the application of law to fact, or opinions about either...." Fed. R. Civ. P. 36(a)(1)(A). Requests for Admissions "expedite trials by establishing as true certain material facts of a case without the necessity of formal proof at trial." *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 554 (10th Cir.1978) (citation omitted). The 1970 amendment to rule 36(a) deleted "relevant matters of fact," thus allowing requests applying law to fact. Fed. R. Civ. P. 36, advisory committee note to the 1970 amendments ("As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact. It thereby eliminates the requirement that the matters be 'of fact.' "). However, "[t]he amended provision does not authorize requests for admissions of law unrelated to the facts of the case." *Stark–Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 551, 554 (D.N.M.2011) (Browning, J.)(quoting Fed.R.Civ.P. 36, advisory committee note to the 1970 amendments).

"[A] respondent must, if he or she cannot admit or deny [an RFA], state in detail why not." *Stark–Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. at 555. Rule 36(a)(4) provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed.R.Civ.P. 36(a)(4).

In all cases, respondents must either admit or specifically deny a request for admission, or state in detail why they cannot truthfully admit or deny it. *See* Fed. R. Civ. P. 36(a)(4); *Stark–Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. at 558.

### D. Motions to Compel

Rule 37 provides enforcement mechanisms for Rules 33 and 34. Federal Rule of Civil Procedure 37(a)(1) provides in pertinent part, "[A] party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempt to confer with the person or party failing to make disclosure or discovery." Additionally, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

### E. Individuals With Disabilities Education Act

The Individual With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., "is a spending statute that imposes obligations on the states to provide certain benefits in exchange for federal funds." *Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1274 (10th Cir.2007). One of its core purposes is to "ensure that all children with disabilities have available to them a free

appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).

The primary tool in assuring that a free, appropriate public education ("FAPE") is provided to all eligible children with disabilities is the requirement that the state create an individualized education plan ("IEP") for each disabled child. *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir.1993); see 20 U.S.C. § 1412(a)(4) (instituting IEPs). "The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." *Romer*, 992 F.2d at 1043. IEPs must be reviewed at least annually and revised as appropriate. 20 U.S.C. § 1414(d)(4). For the special education and related services provided to a student to constitute a FAPE, they must be "provided in conformity with the [IEP]." Id. § 1401(8)(D).

In order to support Congress's goal to "mainstream" disabled children, the IDEA provides that such students must be educated "[t]o the maximum extent appropriate ... with children who are not disabled" in a "regular educational environment." 20 U.S.C. § 1412(a)(5)(A) (detailing the meaning of the statutory right to the "least restrictive environment"). Disabled students may only be removed from the regular classroom setting "when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily*." Id.; see Ellenberg*, 478 F.3d at 1268.

When parents believe their child is not being provided a FAPE in the least restrictive environment, they are given "an opportunity to present complaints with respect to any matter relating to the ... educational placement of the child, or the provision of a free appropriate public

7

education to such child." 20 U.S.C. § 1415(b)(6). After filing a complaint, the parents are entitled to an impartial due process hearing. Id. § 1415(f). If that hearing is held before a local education agency such as a school board, "any party aggrieved" by the resulting decision may appeal to the state education agency. Id. § 1415(g). Once state administrative procedures are exhausted, "[a]ny party aggrieved by the findings and decision" may file a civil action in state or federal court. Id. § 1415(i)(2); see Ellenberg, 478 F.3d at 1269–70.

### F. Discovery and IDEA Appeals

In general, discovery under the federal rules is available for any matter relevant to the claim or defense of a party. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009); Fed. R. Civ. P. 26(b)(1). Discovery is available in administrative appeals under IDEA, and Congress expressly directed the district courts to receive "additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). Additional evidence means supplemental evidence. "Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony." *Rodriguez v. Independent School District of Boise City, No. 1*, 2013 WL 943838, *4 (D. Idaho)(quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472-73 (9th Cir. 1993). "The determination of what is 'additional' evidence must be left to the discretion of the trial court" and the reasons for supplementation will vary; "they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id*.(quoting *Ojai Unified Sch. Dist*., 4 F.3d at 1473. "If either party files a motion to compel discovery, the Court expects that the party will explain why supplementation is necessary. The potential reasons given by the Ninth Circuit in *Ojai Unified School District* are a good starting point." *Rodriquez*, 2013 WL 943838,

*4, n. 1. The District of New Mexico has adopted the following "standard" of possible reasons to allow the supplementation of the administrative record:

> [T]he Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial. The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Miller ex rel. S.M. v. Board of Educ. Of Albuquerque Public Schools*, 455 F.Supp.2d 1286, 1302 (D.N.M. 2006)(quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984)).

The party seeking discovery under the IDEA must demonstrate that the discovery sought is relevant. "And relevant under these circumstances is not an abstract concept: the party seeking discovery must demonstrate that the discovery sought is 'relevant to the issue properly before the district court.'" *Rodriguez*, 2013 WL 943848, *5 (quoting *S.M. v. Bd. of Educ. Of Albuquerque Public Schools*, 565 F.3d 1232, 1241 (10th Cir. 2009)). The discovery must relate to the assignments of error raised in the administrative appeal. *Rodriquez*, 2013 WL 943848, *5. The party seeking discovery must also demonstrate that the discovery is not cumulative of the materials received during the administrative proceedings. *Id.*

### G. Family Education Rights and Privacy Act

Under the Family Educational Rights and Privacy Act ("FERPA"), no funds shall be made available under certain programs to an educational agency or institution which permits the release of educational records of students without the consent of their parents. FERPA contains certain non-disclosure provisions that prohibit federal funding of educational institutions which, through policy or practice, release educational records to unauthorized persons. *Gonzaga Univ.*

*v. Doe*, 536 U.S. 273, 276-77, 122 S.Ct. 2268 (2002). FERPA does not create a privilege that allows an educational institution to refuse to disclose student information; rather, it "recognizes an important privacy interest for students." *Nkemakolam v. St. John's Military School, et al.*, 2012 WL 6610980, at *3 (D. Kan. Dec. 18, 2012)(citing *Brown v. University of Kansas*, 2012 WL 612512, at *1 (D.Kan. Feb. 27, 2012). Thus, while FERPA was intended to prevent schools from adopting a policy or engaging in a practice of releasing educational records, it does not, by its express terms, prevent discovery of relevant school records under the Federal Rules of Civil Procedure. *Ellis v. Cleveland Municipal School District*, 309 F.Supp.2d 1019, 1023 (N.D. Ohio 2004)(citing *Rios v. Read*, 73 F.R.D. 589, 598 (D.C.N.Y. 1977)). "Given FERPA's underlying privacy concerns, it does, however, place a higher burden on a party seeking access to student records to justify disclosure than with the discovery of other types of records." *Id.* Discovery of otherwise personally identifiable information may be disclosed as long as (1) the parental notification requirements of the regulation are met and, (2) a protective order restricts disclosure of the information to the purposes of the litigation. *C.T. v. Liberal School District, et al.*, 2008 WL 394217, at *4 (D. Kan. Feb. 11, 2008).

The statute is expressly limited to "the education records of a student," "the education records of . . . children," and "the education records maintained by the State educational agency on . . . children." 20 U.S.C. § 1232g(1)(A) & (B). It defines "education records" to mean "those records, files, documents, and other materials which (i) contain information directly releated to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

### III. ANALYSIS

#### A. Interrogatories Nos. 5 and 14.

The Petitioners have conceded that these interrogatories have been supplemented by the Respondents and are no longer the subject of their Motion to Compel. [Doc. 48 at 1.]

#### B. Interrogatory No. 17

Interrogatory No. 17 requests information about activities that Johnny S. participated in outside the special education classroom. Petitioners argue that this information is relevant to their claims of error regarding Respondents' failure to ensure that the IEP team address Johnny S.'s Least Restrictive Environment by excluding him from nonacademic opportunities available to his nondisabled peers. [Doc. 44 at 4-5.] Respondents contend that M. Christina Velasquez, the District's Acting Student Services Director, "has now fully and completely answered [Interrogatory No. 17] with all the relevant requested facts that were within her own knowledge or that she was able to ascertain through reasonable inquiry of other District personnel who might have knowledge." [Doc. 46 at 4.]

While the Court finds that the information sought is relevant to the claims of error regarding Johnny S.'s Least Restrictive Environment and exclusion from nonacademic opportunities with nondisabled peers, the Court is not persuaded that Respondents have failed to answer the interrogatory. Respondents have conclusively stated that they have fully and completely answered based on personal knowledge and reasonable inquiry. In addition, to the extent the Respondents did not list "any individual who witnessed Johnny S.'s participation in such activity," Respondents' answer makes clear that Johnny S. did *not* participate in the nonacademic activities listed, thereby making it impossible to have any witnesses to his

11

participation. For these reasons, Petitioners' Motion to Compel regarding Interrogatory no. 17 is **DENIED**.

Respondents are reminded, however, that they are under a continuing obligation to supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). If additional information becomes available regarding Johnny S.'s participation in nonacademic activities with nondisabled peers in any of the calendar years listed in Interrogatory No. 17, Respondents have a obligation to supplement their answer.

### C. Interrogatory Nos. 7 and 8

Interrogatory Nos. 7 and 8 request identifying information about other students assigned to Johnny S.'s special education classroom. Petitioners argue that obtaining this information is relevant to its claims of error that Johnny S. was enrolled in a self-contained D level classroom during the relevant periods and was educated to the maximum extent appropriate with children who are nondisabled. [Doc. 44 at 6.] While the Petitioners concede the nature of the information requested impacts the privacy concerns of these students, they have offered to enter into a confidentiality order to address those concerns. [Doc. 44 at 5.] Petitioners argue that the need for the information in question outweighs the privacy interests of the other students. [Doc. 44 at 6.] Respondents contend that they are prohibited from releasing educational records of other students under the Family Educational Rights and Privacy Act (FERPA). 20 U.S.C. 1232g(b); 34 C.F.R. 99.30. [Doc. 46 at 4.] Citing to 34 C.F.R. 99.31, Respondents contend that while FERPA provides some limited exceptions permitting the release of protected education information to third parties, Petitioners request here does not fall within those exceptions. [Doc. 46 at 4-5.] Respondents also cite to a number of cases to support its argument that before

court approval is given, a requesting party must first demonstrate a genuine need for information that outweighs the privacy interests of students. [Doc. 46 at 5-8.] Respondents assert that the Petitioners have not done so here. [Doc. 46 at 8.]

Petitioners' Motion to Compel regarding Interrogatory Nos. 7 and 8 is **GRANTED IN PART**. While the Court finds that the information sought is relevant to Petitioners' claims of error that Johnny S. was enrolled in a self-contained D level classroom during the relevant periods and was educated to the maximum extent appropriate with children who are nondisabled, the Court is not persuaded that releasing education records with personally identifiable information of Johnny S.'s classmates is necessary for determining the composition of Johnny S's special education classroom during the 2010-2011 school year. To that end, the Court finds that Respondents' Supplemental Response is insufficient.

Therefore, Respondents are ordered to supplement their responses to Interrogatory Nos. 7 and 8 by providing information regarding the composition of Frank Diaz's special education classroom during the 2010-2011 school year. The Respondents' supplemental response should include all of the following, but may be produced in such a way as to not provide personally identifying information for the students being described:

The total number of students assigned to the special education classroom of Frank Diaz during the 2010-2011 school year. Of those students, Respondents are ordered to provide specific information regarding:

(1) the nature of each student's disability and whether the student's disability was considered a "low incidence disability";

(2) how many hours each student attended Mr. Diaz's special education class;

(3) whether certain students attended classes and activities outside of Mr. Diaz's classroom and, if so:

13

      (a)      how many students attended classes and activities outside of Mr. Diaz's classroom;

      (b)      what was the nature of those classes and/or activities; and

      (c)      why were those activities programmed for certain students and not for Johnny S.

### D.    Requests for Admission Nos. 3 and 4 and Interrogatory Nos. 9 and 10

Request for Admissions Nos. 3 and 4 and Interrogatory Nos. 9 and 10 seek information about the 1:1 supervision that was required by Johnny S.'s IHP and IEP. [Doc. 44 at 7.] Petitioners argue that this information is relevant because part of their assertions in this case is that Johnny S. was not provided with the 1:1 supervision required by his IHP and IEP, which Petitioners allege is the cause of Johnny S.'s injuries and absenteeism from school and being denied a free appropriate public education. [Doc. 44 at 8.] Respondents contend that because the relief available to Petitioners under IDEA is prospective and equitable, and because Johnny S. has been provided with multiple IHPs since the events in the contested discovery requests, the sufficiency of the IHPs in use in September 2010 and October 2011 is moot and that reconstruction of the accidents today is of no relevance to the claims at issue in the DPHO appeal. [Doc. 46 at 8-9.] Respondents argue that Petitioners are essentially seeking information that could show that Johnny S. was not provided with sufficient supervision, which led to his falls and injuries, and that these facts are of "obvious import to Petitioners' personal injury tort claims in their companion civil complaint,"[2] which is presently stayed. [Doc. 46 at 8-9.] As such, Respondents argue that Petitioners are attempting to engage in discovery regarding their civil complaint and circumvent the court's stay in those proceedings. [Doc. 46 at 9-10.]

---

    [2] Petitioners have filed a civil complaint for money damages arising out of the same facts presented here. *See Johnny S. v. Pojoaque Valley School District, et al.*, Civ. No. 13-27 MCA/KBM.

The Petitioners allege that Johnny S.'s IEP required 1:1 supervision and that an IHP was necessary to address his safety. The claim of error posited by Petitioners for judicial review addresses alleged deficiencies in the development and implementation of an appropriate IHP for inclusion in Johnny S.'s IEP. Petitioners argue here that determining whether there was 1:1 supervision during the relevant time period will provide evidence that Respondents failed to develop and implement an appropriate IHP and is therefore relevant. Petitioners' Request for Admissions Nos. 3 and 4 specifically ask the Respondents to admit that the District did not have a 1:1 educational assistant assigned to Johnny S. [Doc. 44-2 at 5, 7.]

While the Court finds that the information requested is relevant to determining whether or not Johnny S.'s IHP was appropriately developed and implemented, the information Petitioners are seeking here is already part of the administrative record. The DPHO's summary of evidence clearly states that "[a]ll of the identified IEPs provided that a one-on-one ("1:1") aide referred to as an Instructional Assistant ("IA") would be assigned to Student individually. *It is undisputed that no IA was assigned to Student individually until after the 2010 Fall.*"[3] [Doc. 3-1 at 7.] (Emphasis added.) In addition, the DPHO states in his Findings of Fact, "An IA was *not* assigned to Student individually until after the 2010 Fall." [Doc. 3-1 at 17, ¶ 5.] The party seeking discovery must demonstrate that the discovery is not cumulative of the materials received during the administrative proceedings. *Rodriguez v. Independent School District of Boise City, No. 1*, 2013 WL 943838, *5 (D. Idaho March 11, 2013).

---

[3] "On September 9, 2010, Student tripped and fell ("2010 Fall") while being escorted by one of the classroom IAs and another student to the parent pickup area." The IA was not assigned to the Student individually, but rather was the 1:1 assigned to the student that was with them during the escort. [Doc. 3-1 at 6.]

For these reasons, Petitioners' Motion to Compel regarding Request for Admissions Nos. 3 and 4 and Interrogatory Nos. 9 and 10 is **DENIED**.

E.  **Requests for Admission Nos. 5 and 6, Interrogatory Nos. 11 and 12, and Requests for Production Nos. 15 and 16**

Requests for Admission Nos. 5 and 6, Interrogatory Nos. 11 and 12, and Requests for Production Nos. 15 and 16 seek information and documents about the implementation of the health and safety plan for Johnny S. during the 2011-2012 school year. [Doc. 44 at 8.] Specifically, Petitioners are asking whether Johnny S. was strapped, belted or otherwise secured in his wheelchair, and whether he was wearing a helmet on October 24, 2011, when he fell and was injured. [Doc. 44-2 at 9-15.] Petitioners are also seeking information about who made the decision to not strap, belt or otherwise secure Johnny S. in his wheelchair, and to not have him wear his helmet, and what documentation in Johnny S.'s file supported that decision. [Id.]

Petitioners argue that this information is relevant because part of their assertions in this case is that the IHP for Johnny S. was not implemented on October 24, 2011, which caused Johnny S.'s injuries and absenteeism from school and being denied a free appropriate public education. [Doc. 44 at 9.] Respondents contend that because the relief available to Petitioners under IDEA is prospective and equitable, and because Johnny S. has been provided with multiple IHPs since the events in the contested discovery requests, the sufficiency of the IHPs in use in September 2010 and October 2011 are moot and that reconstruction of the accidents today had no real relevance to the claims at issue in the DPHO appeal. [Doc. 46 at 8-9.] Respondents argue that Petitioners are essentially seeking information that could show that Johnny S. was not provided with sufficient supervision, which led to his falls and injuries, and that these facts are of "obvious import to Petitioners' personal injury tort claims in their companion civil

16

complaint," which is presently stayed. [Doc. 46 at 8-9.] As such, Respondents argue that Petitioners are attempting to engage in discovery regarding their civil complaint and circumvent the court's stay in those proceedings. [Doc. 46 at 9-10.]

### 1. Requests for Admission Nos. 5 and 6

Petitioners argue that evidence of Johnny S.'s not being strapped, belted or otherwise secured in his wheelchair, and whether he was wearing a helmet on October 24, 2011, will provide evidence that Respondents failed to develop and implement an appropriate IHP and is therefore relevant. Petitioners' Request for Admissions Nos. 5 and 6 specifically ask the Respondents to admit that Johnny S. was not strapped, belted or otherwise secured in his wheelchair, and was not wearing a helmet on October 24, 2011. [Doc. 44-2 at 9, 11.] While the Court finds that the information requested is relevant to determining whether or not Johnny S.'s IHP was appropriately developed and implemented, the information Petitioners are seeking here is already part of the administrative record. The DPHO's summary of evidence details the fact of Johnny S.'s seizure on October 24, 2011, and subsequent injury, and includes information that he was not in his wheelchair nor wearing his helmet. [Doc. 3-1 at 8.] In discussing the 2011 Fall, the DPHO's findings clearly state:

> [S]tudent was refusing to eat lunch with the now IEP-required helmet on, so he was allowed to sit in a regular chair without the helmet to eat lunch. A subsequent seizure resulted in Student hitting and gashing the back of his head.

[Id.] The party seeking discovery must demonstrate that the discovery is not cumulative of the materials received during the administrative proceedings. *Rodriguez v. Independent School District of Boise City, No. 1*, 2013 WL 943838, *5 (D. Idaho March 11, 2013).

For these reasons, Petitioners' Motion to Compel regarding Requests for Admission Nos. 5 and 6 is **DENIED**.

2. **Interrogatory Nos. 11 and 12, and Requests for Production Nos. 15 and 16**

The Court finds that discovery regarding who made decisions regarding modifications to the application of Johnny S.'s IHP and what documentation was relied upon in deciding not to strap, belt or otherwise secure Johnny S. in his wheelchair, and not to have him wearing his helmet on October 24, 2011, is relevant to determining whether or not Johnny S.'s IHP was appropriately developed and implemented.

The issue on administrative appeal is whether the DPHO erred in finding that the Respondents complied with the provisions of IDEA in assuring that Johnny S. received a free appropriate public education and that an adequately developed and implemented IHP was in Johnny S.'s IEP. The primary tool in assuring that a free appropriate public education is provided to all eligible children with disabilities is the requirement that the state create an individualized education plan ("IEP") for each disabled child. *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir.1993); see 20 U.S.C. § 1412(a)(4) (instituting IEPs). "The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." *Romer*, 992 F.2d at 1043. Here, multiple IEPs were created for Johnny S. [Doc. 3-1 at 4.] And while the IDEA does not direct the development or content of an IHP, Johnny S.'s IEP included an IHP to address concerns regarding his specific medical conditions and personal safety. [Doc. 3-1 at 5.] With respect to Johnny S.'s IHPs, the DPHO stated:

> [After the 2010 Fall], Student's IHP was revised at least once each year, distributed to all the staff that worked with him and the emergency protocol was implemented on the only other occasion when Student experienced a seizure at school on October 24, 2011 ("2011 Fall").

[Doc. 3-1 at 7.] The provisions of Johnny S.'s multiple and evolving IHPs should speak for themselves; *i.e.*, they either provided that Johnny S. be strapped, belted and otherwise secured in his wheelchair, and wear a helmet, or they did not. That said, who made decisions regarding modifications to the application of Johnny S.'s IHP and how or whether those modifications were documented are relevant to the development and implementation of Johnny S.'s IHP. For these reasons, Petitioners' Motion to Compel regarding Interrogatory Nos. 11 and 12, and Requests for Production Nos. 15 and 16 is **GRANTED**. However, the Court is limiting the scope of the information requested only to inquiry regarding the District policies that governed the implementation of Johnny S.'s IHP, and not to any specific information about the accidents at issue in Petitioners' civil complaint.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioners-Appellants' Motion to Compel Responses to Petitioners-Appellants First Set of Interrogatories, Requests for Admission and Requests for Production [Doc. 44] is **GRANTED IN PART and DENIED IN PART** as set forth above. The parties will have thirty (30) calendar days from the filing of this order to comply.

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge**