IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHNNY S., a minor child, by and through his parents
and next friends DARLENE R. and JUAN S.,

       Petitioners-Appellants,

    vs.                          Civ. No. 13-145 MV/ACT

POJOAQUE VALLEY SCHOOL DISTRICT, and
THE BOARD OF EDUCATION FOR THE
POJOAQUE VALLEY SCHOOL DISTRICT,

       Respondents-Appellees.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Respondents' Motion for a Protective Order ("Motion"), filed October 25, 2013. [Doc. 47.] On November 21, 2013, Petitioners filed their Response ("Response"). [Doc. 51.] On December 9, 2013, Respondents filed their Reply ("Reply"). [Doc. 56.] Having considered the parties' submissions and the relevant law, the Court finds that Respondents' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

Petitioners-Appellants ("Petitioners") filed their Petition for Judicial Review and Attorney's Fees Pursuant to 20 U.S.C. § 1415 on February 12, 2013.[1] [Doc. 1.] Petitioners are seeking judicial review of the Due Process Hearing Officer's ("DPHO") Final Decision issued by the New Mexico Public Education Department, Office of Special Education, in Case Number

---

[1] Petitioners filed a Complaint for Civil Rights Violation, Disability Discrimination, and Negligence on September 4, 2012, in the Second Judicial District Court, County of Bernalillo, that is based on the same events in this proceeding.  The case was subsequently removed to the United States District Court for the District of New Mexico on January 10, 2013. [USDC NM Civ. No. 13-27 MCA/KBM.]  That case is currently stayed pending the Court's decision on the issue of qualified immunity. [USDC NM. Civ. No. 13-27, Doc. 52.]

NMPED DPH 1112-29. [Doc. 3-1.] Petitioners prevailed on most of their claims at the administrative level and were awarded significant equitable relief. [Doc. 1 at 2, ¶ 10.] However, Petitioners claim "there are aspects of the DPHO's award of equitable relief that are not adequate to address the ongoing and continuous deficits in Johnny S.'s educational program[.]" [Doc. 1 at 2-3, ¶ 11.] The claims for relief sought by Petitioners are as follows:

1.   The DPHO erred in concluding that Respondents had not denied a free appropriate public education to Johnny S. by failing to develop and implement appropriate Health Care Plans ("IHP") for Johnny S. for the 2010-2011 and 2011-2012 school years.

2.   The DPHO erred in finding that an adequate IHP was present in Johnny S.'s IEP at the beginning of 2010-2011 school year and that the District staff members who worked with Johnny S. were informed as to its provisions.

3.   The DPHO erred in concluding that Respondents had not denied a free appropriate public education to Johnny S. by not providing homebound or other educational services in the home when Johnny S. was absent due to injuries incurred at school and by not convening an IEP team meeting to affirmatively address Johnny S.'s need for services during that period.

4.   The DPHO erred in concluding that Respondents had educated Johnny S. to the maximum extent appropriate with children who are nondisabled and by not addressing his claim that he was excluded from nonacademic opportunities available to his non-disabled peers required by his IEP.

5.   The DPHO erred in failing to address the failure of Respondents to include a general education teacher in Johnny S.'s IEPs and failing to ensure that the IEP team address Johnny S.'s Lease Restrictive Environment.

6.   The DPHO erred in finding that Johnny S. Was enrolled in a self-contained, "D level" special education classroom for students with low-incident disabilities.

7.   The DPHO erred in finding that the District had conduced a Functional Behavior Assessment and in implicitly finding that Johnny S.'s behaviors justified his segregation in and within the special education classroom.

8.   The DPHO erred in concluding that the District was not required under the IDEA to conduct a functional behavior assessment ("FBA") or develop and implement a behavioral intervention plan ("BIP").

9.      The DPHO erred in rejecting the expert testimony and opinions of Dr. Michael O'Leary.

10.     Petitioners are entitled to an award of attorney's fees and costs as prevailing parties in their due process action and in their Petition for Review and Attorney's Fees.

[Doc. 1 at 4-5.]

Johnny S. is 20 years old and has a medical history significant for Fetal Alcohol Syndrome, severe seizure disorder or epilepsy, and Attention Deficit Hyperactivity Disorder. [Doc. 3-1 at 4.]  He has intellectual and physical abilities that are "significantly delayed resulting in marked deficits in cognitive abilities, receptive and expressive language, fine and gross motor functioning and overall adaptive behavior."  [Id.] He has been eligible for special education and related services since "at least 2003." [Id.]

## RELEVANT LAW

### A.      Scope and Relevance of Discovery

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  Federal courts have held that the scope of discovery under Rule 26 is deliberately broad.  "The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1974); *see Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matt*, 229 F.R.D. 649, 654 (D.N.M. 2004 (Browning, J.) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").

3

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, the "object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D.Ill. 1998)(quoting *Piacenti v. General Motors Corp.*, 173 F.R.D. 221, 223 (N.D.Ill. 1997)).  Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Courts have also recognized that "[t]he legal tenet that relevancy in the discovery content is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.*

**B.    Protective Orders**

Rule 26(c) provides the mechanism for protecting certain discovery.  Federal Rule of Civil Procedure 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.] . . .  The motion must include a certification that the movant has in good faith conferred with other affected parties in an effort to resolve the dispute without court action."  "If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery."

"Federal district courts have broad discretion over discovery." *Morales v. E.D. Etnyre & Co.*, 229 F.R.D. 661, 662 (D.N.M. 2005).  District courts may also issue a protective order if "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "It is the party seeking the protective order who has the burden to show good cause for a protective order." *Velasquez v. Frontier Medical Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005). The party seeking the protective order "must submit a

4

particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). *See Miller v. Regents of the Univ. of Colo.*, 88 F.3d 518 (Table), 1999 WL 506520 *11-12 (10th Cir.1999) ("The district court is in the best position to weigh these variables because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties.").

C.   **Individuals With Disabilities Education Act**

The Individual With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., "is a spending statute that imposes obligations on the states to provide certain benefits in exchange for federal funds." *Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1274 (10th Cir.2007). One of its core purposes is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).

The primary tool in assuring that a free, appropriate public education ("FAPE") is provided to all eligible children with disabilities is the requirement that the state create an individualized education plan ("IEP") for each disabled child. *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir.1993); see 20 U.S.C. § 1412(a)(4) (instituting IEPs). "The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." *Romer*, 992 F.2d at 1043. IEPs must be reviewed at least annually and revised as appropriate. 20 U.S.C. § 1414(d)(4). For the special education and related services provided to a student to constitute a FAPE, they must be "provided in conformity with the [IEP]." Id. § 1401(8)(D).

5

In order to support Congress's goal to "mainstream" disabled children, the IDEA provides that such students must be educated "[t]o the maximum extent appropriate ... with children who are not disabled" in a "regular educational environment." 20 U.S.C. § 1412(a)(5)(A) (detailing the meaning of the statutory right to the "least restrictive environment"). Disabled students may only be removed from the regular classroom setting "when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id.; see Ellenberg*, 478 F.3d at 1268.

When parents believe their child is not being provided a FAPE in the least restrictive environment, they are given "an opportunity to present complaints with respect to any matter relating to the ... educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). After filing a complaint, the parents are entitled to an impartial due process hearing. Id. § 1415(f). If that hearing is held before a local education agency such as a school board, "any party aggrieved" by the resulting decision may appeal to the state education agency. Id. § 1415(g). Once state administrative procedures are exhausted, "[a]ny party aggrieved by the findings and decision" may file a civil action in state or federal court. *Id.* § 1415(i)(2); *see Ellenberg*, 478 F.3d at 1269–70.

### D.   <u>Discovery and IDEA Appeals</u>

In general, discovery under the federal rules is available for any matter relevant to the claim or defense of a party. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009); Fed. R. Civ. P. 26(b)(1). Discovery is available in administrative appeals under IDEA, and Congress expressly directed the district courts to receive "additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). Additional evidence means supplemental evidence.

6

"Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony."  *Rodriguez v. Independent School District of Boise City, No. 1*, 2013 WL 943838, *4 (D. Idaho)(quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472-73 (9th Cir. 1993).  "The determination of what is 'additional' evidence must be left to the discretion of the trial court" and the reasons for supplementation will vary; "they might include gaps in the administrative transcript owning to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing."  *Id.*(quoting *Ojai Unified Sch. Dist.*, 4 F.3d at 1473.  "If either party files a motion to compel discovery, the Court expects that the party will explain why supplementation is necessary.  The potential reasons given by the Ninth Circuit in *Ojai Unified School District* are a good starting point."  *Rodriquez*, 2013 WL 943838, *4, n. 1.  The District of New Mexico has adopted the following "standard" of possible reasons to allow the supplementation of the administrative record:

> [T]he Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial.  The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing.   The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Miller ex rel. S.M. v. Board of Educ. Of Albuquerque Public Schools*, 455 F.Supp.2d 1286, 1302 (D.N.M. 2006)(quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984)).

The party seeking discovery under the IDEA must demonstrate that the discovery sought is relevant.  "And relevant under these circumstances is not an abstract concept: the party seeking discovery must demonstrate that the discovery sought is 'relevant to the issue properly

before the district court.'" *Rodriguez*, 2013 WL 943848, *5 (quoting *S.M. v. Bd. of Educ. Of Albuquerque Public Schools*, 565 F.3d 1232, 1241 (10th Cir. 2009)).  The discovery must relate to the assignments of error raised in the administrative appeal.  *Rodriquez*, 2013 WL 943848, *5. The party seeking discovery must also demonstrate that the discovery is not cumulative of the materials received during the administrative proceedings.  *Id.*

**ANALYSIS**

Respondents are seeking to quash Petitioners' subpoenas for depositions and to protect Respondents from responding to discovery regarding the circumstances of accidents involving Johnny S. in September 2010 and October 2011.[2]  Specifically, Petitioners want to take the depositions of M. Christina Velasquez, Norma Cavazos, and Timothy Trujillo. [Doc. 47 at 7.] M. Christina Velasquez is the Pojoaque School District's Acting Student Services Director. [Id.] Ms. Velasquez testified at the administrative proceeding and was examined by Petitioners' counsel. [Id.] Norma Cavazos is the Pojoaque School District's former Student Services Director. [Id.] Ms. Cavazos testified at the administrative hearing proceeding and was examined by Petitioners' counsel. [Id.] Timothy Trujillo was Johnny S.'s Educational Aide at the time of his September 2010 accident. [Id.] Mr. Trujillo was not called as a witness during the administrative hearing. [Id.]

Respondents argue that discovery is limited in IDEA appeals and that Petitioners bear the burden of demonstrating that "the discovery sought is relevant to the issues properly before the district court," and that "the discovery is not cumulative of materials received during the

---

[2]  To the extent Respondents' Motion for Protective Order addresses the discovery issues raised in Petitioners' Motion to Compel [Doc. 44], those discovery issues have been addressed by the Court in the Memorandum Opinion and Order entered contemporaneously herewith.

administrative proceedings." [Doc. 47 at 6.]    Respondents further argue that there is a rebuttable presumption that witnesses who testified at the administrative proceeding not be allowed to testify. [Doc. 47 at 7.] Here, Respondents assert that the information requested concerning Johnny S.'s two accidents at school is not relevant to any claim or remedy at issue in the present action. [Doc. 47 at 10.] Respondents contend that Johnny S.'s IHPs in 2010 and 2011 are not relevant to the question of whether a new IHP is needed or should be ordered now. [Id.] Finally, Respondents assert that witnesses appearing at the administrative hearing testified about the circumstances of the accidents under examination by Petitioners' counsel, and any additional information should be barred on the basis of irrelevance, cumulativeness and duplication. [Id.]

Petitioners argue that the discovery limitations represented by Respondents address the standard for the *admissibility* of additional evidence in IDEA appeals and do not apply to the traditional liberal rules regarding the scope of discovery and the fundamental question before this Court of whether the information requested is relevant. [Doc. 51 at 4.] Petitioners assert that because the administrative process does not allow for deposing witnesses, and because they do not intend to go over testimony previously provided at the administrative hearing, they should be allowed to take the depositions of M. Christina Velasquez and Norma Cavazos. [Id. at 6.]  With respect to Timothy Trujillo, Petitioners contend that they advised the hearing officer in the administrative proceedings that they intended to call Mr. Trujillo, but they were unable to locate him prior to the date of the hearing. [Id. at 7.]  Petitioners argue that because the hearing officer relied on a written statement by Mr. Trujillo, and discounted the testimony of Johnny S.'s father based on that written statement, his deposition should not be barred. [Id.]

The Court finds that Respondents' Motion for Protective Order is **GRANTED IN PART and DENIED IN PART**.

The Petitioners have not stated what "additional evidence" they believe can be provided by M. Christina Velasquez and Norma Cavazos.  Instead, they are asking for discovery depositions to go on a fishing expedition for information that "might enlighten a particular relevant issue."  The administrative record indicates that counsel for the Petitioners had the opportunity to question both M. Christina Velasquez and Norma Cavazos at the administrative hearing on all issues.  There is nothing in the record to suggest that additional testimony from these witnesses will fill in "gaps in the administrative record owing to mechanical failures," that these witnesses or any other witnesses besides Mr. Trujillo was not available, that there was "an improper exclusion of evidence by the administrative agency," or that they possess "evidence concerning events occurring subsequent to the administrative hearing."

Therefore, the Court finds that because M. Christina Velasquez and Norma Cavazos were available, testified, and were questioned by Petitioners' counsel during the administrative hearing, and because the Petitioners have not demonstrated that the discovery they are seeking is not merely cumulative of the materials received during the administrative proceedings, and therefore have not overcome the presumption that these witnesses should not be allowed to testify, Respondents' Motion for Protective with respect to the depositions of M. Christina Velasquez and Norma Cavazos is **GRANTED**.

The Court also finds that because Timothy Trujillo was not available, did not testify, and was not questioned by Petitioners' counsel during the administrative hearing, and because the hearing officer relied on the written statement of Timothy Trujillo, *inter alia*, in finding that at the time of Johnny S.'s fall in 2010 "an IHP was in place and the IA responsible for escorting Student to the parking lot was aware of its contents, having learned about it from Teacher," Respondents' Motion for Protective Order with respect to the deposition of Timothy Trujillo is

10

**DENIED.**  However, the Court is limiting the scope of the deposition of Mr. Trujillo only to inquiry regarding any policies that governed the implementation of Johnny S.'s IHP.  In other words, Petitioners are allowed to question Mr. Trujillo regarding what he knew about Johnny S.'s IHP, how that information was communicated to him, and whether he received any training specific to Johnny S.'s IHP.  In addition, Petitioners are only allowed to question Mr. Trujillo about the accident of September 9, 2010, to the extent it relates to Mr. Trujillo's knowledge and implementation of Johnny S.'s IHP.

      **IT IS SO ORDERED.**

                                     **ALAN C. TORGERSON**
                                     **United States Magistrate Judge**